WILLIAM D. ATKINSON vs. FRANCIS E. PARKS, and others.

Somerset.    Opinion March 29, 1892.

*New Trial.    Jury.    Irrelevant Evidence.*

Where a mass of evidence, principally documentary, has been introduced
against objection, in the trial of a cause, and such evidence, although inap-
plicable and irrelevent to the issue, is of a character plainly calculated to
mislead the jury or prejudice them against the losing party, a new trial will
be granted.

ON MOTION AND EXCEPTIONS.

The case appears in the opinion.

*D. D. Stewart*, for plaintiff.

*S. S. Brown*, for defendants.

PETERS, C. J.   The subject of this litigation is a promissory
note reading as follows : "Pittsfield, Maine, August 29, 1881.
Four months after date I promise to pay the order of myself
twenty-five hundred dollars at any bank in Waterville, value
received, F. E. Parks."   The note was indorsed by the persons
and in the order as follows: F. E. Parks, W. D. Atkinson
(plaintiff), F. E. Parks Bros.   The members of the firm of
Parks Bros., were F. E. Parks, Llewellyn Parks, Warren L.
Parks and Daniel M. Parks.

The note was discounted by the People's Bank of Waterville
at the request of F. E. Parks, and the proceeds, first credited
to the firm, were afterwards drawn out in the firm name by F.
E. Parks, and credited by the bank to his private account.
The latter had frequent transactions with the banks in his own
name, and also did most of the business of the firm with the
banks.   At the time the note was discounted differences had
arisen between F. E. Parks and his brothers, of which more
will be said presently.   When this note became due it was
protested for non-payment; and suits were immediately com-
menced thereon by the bank against all the parties thereto, the
result of which was a collection by the bank, upon executions,
of a portion of their claim from F. E. Parks, another portion
from the plaintiff (Atkinson), and the balance from the firm of
Parks Brothers.

The present action was instituted by the plaintiff to recover upon the note the amount paid by him to the bank, he alleging that the defendants (Parks Brothers) were prior indorsers to himself, although his own name is written on the back of the note over their name. The question of the case is whether plaintiff really indorsed the note as an accommodation for the firm, or for F. E. Parks individually. On this question a great mass of evidence was produced legitimately bearing on the issue.

In addition to this, a large amount of documentary materials and other evidence were woven into the case by the plaintiff against the objection of the defendants, the bulk of which was in our judgment inadmissible.

It seems that in 1882, about a year after the note transaction, a bill in equity was brought by the brothers against F. E. Parks to obtain a settlement of their partnership affairs, which bill went to final judgment through the various stages incident to such a proceeding, the complainants recovering a large judgment against the respondent. The papers, the introduction of which, into this trial, it is contended by the defendants, offended against the legal proprieties of the case, are as follows : papers in People's Bank against F. E. Parks, including writ, judgment, execution and proceedings of officer thereon, deed of officer conveying the real estate of F. E. Parks, and these papers accompanied by oral testimony that the land so sold was worth more than it sold for ; and all the papers in the equity case, comprising the bill with writ attached, the return thereon, defendant's answer, appointments of master and receiver, report of master asking instruction, receiver's sale of real and personal property of firm, receiver's conveyance to the complainants of property bid off by them, decree of court on master's report, payments to complainants under order of court and their receipts for same, the final decree, and the levy made by the complainants against respondent upon the execution awarded them by court. In addition to the admission of the papers in People's Bank against the plaintiff (Atkinson), which was proper enough in order to show a judgment against him on the note and his payment of it, plaintiff was allowed to show that the complainants in the bill

bid off Atkinson's real estate sold by the officer and resold the same to one Shaw for more than they gave for it.

Now, for what purpose were those papers introduced in evidence? The position taken at the law argument by the learned counsel for the plaintiff, if properly appreciated by the court, was that there was a conspiracy between the brothers of F. E. Parks to cheat and injure their brother, and perhaps commit a similiar wrong upon the plaintiff, and that the brothers have in their hands through the fraud thus perpetrated money and means enough of these parties with which they could and should have paid the note in question.

We feel assured, however, that the papers, any and all of them, do not show any such thing and have no tendency to that effect, and that it is a groundless charge so to characterize them. The complainants in the bill recovered against the respondent a proper judgment. All the proceedings were orderly. Money was paid over to the complainants because it belonged to them, and land deeded to them because they were the highest bidders therefor. The plaintiff produces the former proceedings of court which can legally show only just what they purport to show, merely to condemn them.

The papers as a bulk had not any application to the case in hand. There is no pretense that any evidence existed in them to show that any money was to be found among the partnership assets that belonged to this plaintiff, or that was ever provided for or appropriated upon this claim. Those proceedings were only between the present defendants themselves, and were not commenced until a year after the note was made.

It appears that the counsel for plaintiff claimed the right to introduce the receiver's report to show, among other things, that the receiver paid to the People's Bank that part of the note in suit which remained unpaid after the collections by the bank out of the property of Atkinson and F. E. Parks. Why should not the receiver make the payment? How was such payment avoidable? The firm were indorsers on the note, and had no reason to contest their liability upon it. F. E. Parks and Atkinson failing to pay the note in full the firm must in any

view pay the rest. The plaintiff also produced the master's accounts to show that the amount so paid by the firm was charged over and allowed against F. E. Parks in their favor. Why not so? It was in accordance with the position always taken by them that the note was the brother's private transaction and not the firm's. If the firm had not charged the amount over to F. E. Parks, the argument could have been raised that it was because the note was not for F. E. Parks to pay. There is just one purpose for which any partnership papers and proceedings might be admissible, and that would be to show from them an admission by these defendants that the note was for the firm and not for F. E. Parks to pay. But nothing of the kind is indicated in them, but clearly the contrary.

But, if the documentary evidence and the accompaniment of oral testimony were immaterial and irrelevant, were they harmful? We can have no doubt of it. The jury would naturally be prejudiced by such an array of pretended evidence. We should infer from the report that the papers were deliberately read to the jury and flaunted before them at the argument. The sound and glare of such an exhibition would impress and mislead a jury. They would hardly believe that such a bulk of matters was proper to be introduced for their examination and still have no bearing on the issue. The materials so produced and used required the defendants' counsel to explain and defend them, and gave counsel closing for the plaintiff an undue advantage.

In our judgment the great mass of the documentary evidence was inapplicable and inadmissible, and most emphatically so was the testimony to show that the levies or sales of land on the executions were below the market value of such land.

*Exceptions sustained.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.